(31 Misc. Rep. 683.)

STONE v. BICKET et al.

(Supreme Court, Special Term, New York County.    June, 1900.)

MORTGAGE—SECURITY FOR DEBT OF ANOTHER—FRAUD.

G. applied to defendant for a loan, which defendant could not make; but defendant wrote plaintiff that, if plaintiff would lend G. $3,000 on his note, defendant would give a mortgage to secure its payment. Defendant, on plaintiff's consent, executed a bond and mortgage, and sent them to plaintiff, who drew his check for $3,000 to defendant's order, and handed it to G., who took it to defendant, by whom it was indorsed and handed back to G. G. then took it back to plaintiff, who canceled it and gave G. a new check for $1,000, at the same time canceling G.'s debt to plaintiff for $2,000. No note was given by G. to plaintiff. G. failed to pay, and plaintiff commenced foreclosure. *Held*, that plaintiff's failure to take a note from G. invalidated the mortgage, since, as between defendant and G., defendant was only a surety, of which plaintiff had notice, and, if plaintiff had taken a note from G., defendant could have required plaintiff to attempt to collect from G. before resorting to the mortgage.

Action by Charles H. Stone against Robert Bicket and others to foreclose a mortgage. Judgment for defendants.

Joseph Fettretch, for plaintiff.
John A. Straley, for defendants.

ANDREWS, J. The plaintiff, the defendant Robert Bicket, and one Goldsmith were friends. On October 23, 1896, the defendant Bicket sent to the plaintiff the following letter:

"On account of receiving a letter from Mr. Goldsmith yesterday morning, I called on you about 12 noon, and found the office closed, and, as I became deadly sick, made for home at once, where I was put to bed and blistered so that it would be impossible for me to leave this for two or three days. Mr. Goldsmith came up here last Sunday and told me he required $3,000 to the 1st December, and that unless he could get it he would go under. I have no money at present to spare, and told him so. He then said he thought he could get it from you if I indorsed his note. I have never either made a note nor indorsed one, and shouldn't do so now, but told him that, if you were willing to loan him the money until 1st December on his note, I would secure him by giving you a mortgage on my Thirty-Eighth street property. Should you wish to do this, and notify me, I shall have the mortgage executed as soon as able, and deliver to you. Yours, respectfully, ° R. Bicket."

To this letter the plaintiff sent the following reply:

"R. Bicket, Esq.—Dear Sir: Yours of October 23d at hand. Make out mortgage and let me have same this week, if possible. I go West next week Wednesday, and, unless I have it this week, will make delay. Make mortgage one year, or privilege payable sooner, if you like.

"Yours, truly, Charles H. Stone, 45 Broadway, N. Y. City.
"Stone, N. Y., October 27, 1896."

Thereupon the defendant Bicket had a lawyer prepare a bond to secure the sum of $3,000, payable in one year from the 28th of October, or sooner; and he also had prepared a mortgage, to secure such bond, upon certain property, known as "No. 221 West Thirty-Eighth Street," in this city. Bicket himself signed the bond, and he and his wife executed the mortgage, and the bond and mortgage were then sent to the plaintiff. Thereupon plaintiff made out a check for $3,000, payable to the order of Robert Bicket, and gave it to Goldsmith, who delivered it to the defendant Bicket; and he thereupon indorsed it and gave it to Goldsmith, who delivered it to the plaintiff, Stone, who thereupon, without depositing the check, canceled it, and gave Goldsmith a check for $1,000, payable to the order of the latter. It is claimed by the plaintiff that at the time of this transaction Goldsmith was indebted to him in the sum of $2,000, and he admits that he was pressing Goldsmith for the payment of that sum, and that $2,000 of the $3,000 was applied by plaintiff to payment of the alleged indebtedness of Goldsmith to him; and it is conceded that Goldsmith never gave any note for the $3,000, and was never asked by the plaintiff to give it. In fact, the plaintiff and Goldsmith both testify that the giving of the note by Goldsmith was not part of the arrangement under which the bond and mortgage were executed.

This action is brought to foreclose the mortgage, and the above facts are set up as a defense. I am not able to agree with the attorney for the plaintiff in his views as to the effect that should

be given to the letter from Bicket to the plaintiff; and the plaintiff's reply thereto, which are above quoted. The defendant, in his letter, expressly stated that he would give a mortgage to secure Goldsmith's note. The plaintiff, in his reply, said, "Send the mortgage." This, in legal effect, was an acceptance by the plaintiff of the terms proposed by Bicket in his letter, and he was not entitled, under the agreement so made, to receive a mortgage, except as security for Goldsmith's note for $3,000, to be given to the plaintiff. It is said in reply that the defendant caused the mortgage to be prepared by his own lawyer. But I do not see that that fact makes any difference. The defendant himself was not a lawyer, and he appears to have been of a confiding disposition, and somewhat careless in his business methods. It cannot be assumed that he knew that the mortgage should be drawn in such a way as to indicate that it was to be security for Goldsmith's note. Having written to his friend Stone that he would give a mortgage to secure such note, he naturally assumed that Stone would get the note, and that the mortgage, although it made no reference to the note, would be in legal effect merely security for the payment of the note. It is also said that he received receipts for the interest on the mortgage, such interest having been paid apparently by Goldsmith. I do not see how the acceptance of these receipts changed or varied the relationship of the parties, or can be construed as a waiver of the right to have the mortgage treated as security for a note given by Goldsmith. Bicket believed that he had given a mortgage to secure Goldsmith's note, and that it was, therefore, the duty, primarily, of Goldsmith to pay the interest on the mortgage; and the fact that Goldsmith did pay it, and that the receipts made out in the name of Bicket were sent to the latter, cannot have any effect upon the legal relations of the parties. That Bicket believed that the note had been taken is entirely clear from all the circumstances, and especially from the letter which he wrote to the plaintiff on the 1st day of December, 1896, which contains the following:

"If Mr. Goldsmith has paid his note of $3,000, due on the first instant, kindly return me bond, with satisfaction piece, and oblige."

His previous letter to plaintiff, of October 23d, above quoted, stated that, if the plaintiff were willing to loan the money to the 1st of December on his note, Bicket would secure the same by giving a mortgage. The last-mentioned letter to the plaintiff shows that Bicket supposed that the note had been taken, and that the money was payable, as he had stated in his letter of October 23d, on the 1st of December. To this letter the plaintiff sent the following reply:

"Goldsmith has not paid loan of $3,000. I saw him last evening. Called at his house with Mrs. Stone. He seemed suffering from one of his headaches. He is doing all possible to bring about a state of things that will pay you in full. Have a little patience with him. You are secured, and have no risk. I have great hopes of his success."

This letter is in harmony with the methods that were used by the plaintiff to induce the defendant Bicket to give the mortgage in order to enable the plaintiff to collect his own debt of $2,000

66 N.Y.S.—6

from Goldsmith. It will be observed that he merely states that "the loan" of $3,000 has not been paid, and does not apprise the defendant that no note was in existence. From the facts above stated, certain conclusions necessarily follow. As between Goldsmith and Bicket, the latter stood as surety, and of that fact the plaintiff had full knowledge; and the fact that, by the terms of the bond and mortgage held by the plaintiff, Bicket stands as principal, does not alter the legal rights of the parties, and, if the failure of the plaintiff to take the note of Goldsmith before accepting the bond and mortgage prejudiced the rights of the defendants, the necessary result would be that the defendants would be released. That the defendants were prejudiced appears reasonably certain. If the note had been taken, in equity, the defendants could have required the plaintiff to collect, or to make efforts to collect, such note; and, if the plaintiff refused to proceed and collect or to attempt to collect it, he could not have recovered of the defendants. I am of the opinion that the failure of the plaintiff to take the note before accepting the bond and mortgage made the latter invalid, so that the mortgage cannot be enforced, and that the defendants are entitled to have it satisfied of record. Judgment is therefore ordered accordingly.

Judgment accordingly.